# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARIANA SANTAMARIA RIVAS, | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Action No. RDB-25-818 |
| EXPERIAN INFORMATION SOLUTIONS, INC. | * | |
| | * | |
| *Defendant.* | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This matter arises from a series of interactions between Plaintiff Mariana Santamaria Rivas ("Plaintiff" or "Ms. Rivas") and Defendant Experian Information Solutions, Inc. ("Experian" or "Defendant").[1] *See* (ECF No. 1). Ms. Rivas alleges that Experian is a consumer reporting agency that misrepresented her credit file by mixing her information with that of other consumers in violation of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq. See generally* (ECF No. 1). On March 12, 2025, Ms. Rivas initiated this action by filing in this Court a two-Count Complaint alleging two FCRA claims against Defendants Experian, Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union") (collectively, "Original Defendants"). *See* (ECF No. 1). Specifically, she alleges that Original Defendants (1) violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of her consumer reports (Count I); and

---

[1]  As explained below, Ms. Rivas originally sued three consumer reporting agencies: Experian, Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union") (collectively, "Original Defendants"). *See* (ECF No. 1). Pursuant to joint stipulations between Plaintiff, Equifax, and Trans Union, (ECF Nos. 43, 45), however, Plaintiff has dismissed with prejudice her claims against Equifax and Trans Union. *See* (ECF Nos. 44, 46). Accordingly, Experian is the sole remaining defendant in this case.

(2) violated 15 U.S.C. § 1681i by failing to perform a reasonable reinvestigation to verify the accuracy of the information contained in her consumer reports (Count II). (ECF No. 1 ¶¶ 203–223.) On April 30, 2025, Experian filed its Answer (ECF No. 21), in which it preserved its right to assert as an affirmative defense the existence of a binding arbitration agreement with Plaintiff. (*Id.* at 62.) Trans Union and Equifax also separately filed Answers, (ECF Nos. 24, 27) before jointly stipulating with Ms. Rivas to dismissal with prejudice of all claims against them, *see* (ECF Nos. 43, 45). This Court approved both stipulations by separate Marginal Orders, (ECF Nos. 44, 46), and Experian is now the sole remaining Defendant in this action.

Presently pending before this Court is Experian's Motion to Compel Arbitration (ECF No. 28) ("Motion to Compel Arbitration" or "Experian's Motion"). Ms. Rivas has responded in Opposition (ECF No. 33), and Experian has replied (ECF No. 34). Magistrate Judge Coulson of this Court has granted Experian's Motion to Stay Discovery (ECF No. 37) in this matter pending resolution of the Motion to Compel Arbitration. (ECF No. 41). The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, Experian's Motion to Compel Arbitration (ECF No. 28) is GRANTED and this matter is STAYED pending arbitration.

## BACKGROUND

Original Defendants are consumer reporting agencies that collect and maintain information about American consumers, including their income, finances, credit histories, address histories, and other personal information and identifiers. (ECF No. 1 ¶ 43.) They obtain information from banks, credit unions, loan providers, and others connected to the

credit reporting industry, and compile it into individual consumer credit files using an algorithm formula that relies on each individual's unique identifiers. (*Id.* ¶¶ 52, 64–65.) They also sell consumers' information in consumer reports furnished to third parties in the credit reporting industry. (*Id.* ¶ 43–44.)

Experian is affiliated with ConsumerInfo.com, Inc. ("CIC"), "an Experian® company (also known as Experian Consumer Services)." (ECF No. 28-1 at 3; ECF No. 28-2 at 9.) CIC provides to consumers a credit monitoring service ("CreditWorks") that can retrieve each subscriber's credit reports and credit scores from Experian if that subscriber has provided prior written authorization. (ECF No. 28-1 at 6–7.) To sign up for CreditWorks, consumers are required to (1) enter their personal information into a single webform, and (2) click the "Create Your Account" button on that webform to complete enrollment.[2] (ECF No. 28-2 at 2.) Above the "Create Your Account" button is the following bolded disclosure: "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." (*Id.* at 7.) Within this bolded disclosure, "Terms of Use Agreement" and "Privacy Policy" are set out from the surrounding text as blue hyperlinks. (*Id.*) Additional bolded statements follow the disclosure and inform the subscriber that (1) CIC will be authorized "to obtain [the subscriber's] credit report and/or credit score(s) on a recurring basis" for three enumerated reasons, and (2) the subscriber may withdraw this authorization "at any time." (*Id.*)

---

[2] Experian's Motion includes a screen capture of the webform portal containing the personal information requested from each subscriber. *See* (ECF No. 28-2 at 7). The webform requires the subscriber to enter their name, current address, and email address. (*Id.*) The webform also asks if the subscriber lived at the provided address for six months or more and requests the "main reason" that the subscriber visited Experian. (*Id.*) Finally, the webform asks the subscriber to create a password. (*Id.*)

On or about March 28, 2024, Ms. Rivas received emails from American Express, Chase Credit, and Discover Card about "new hard inquires" on her credit reports that decreased her credit score. (ECF No. 1 ¶¶ 75–76, 134.) In response, she contacted Original Defendants to freeze all of her credit reports and obtained copies of her credit reports from each Original Defendant. (*Id.* ¶¶ 78, 85–86, 134–35, 170–71.) Ms. Rivas alleges that her credit file recovered from Experian contained information about accounts, addresses, names, employers, and account inquiries that did not belong to her. (*Id.* ¶¶ 87–94.) In June 2024, she mailed a dispute letter to Experian containing a request that it reinvestigate the disputed information, correct the inaccuracies, and send her a corrected copy of her credit report. (*Id.* ¶¶ 96–98.) Two months later, Experian reported removing inaccurate personal information and accounts from Ms. Rivas's credit file. (*Id.* ¶¶ 111–12.) Ms. Rivas, however, alleges that Experian failed to remove "any" of the disputed inquiries and therefore failed to conduct a reasonable investigation into her March 2024 dispute or a reinvestigation into the accuracy of the information in her credit file. (*Id.* ¶¶ 114–15.) She alleges that Experian's "fail[ure] to unmix [her] credit file from that of the other consumer" caused her "loss of credit;" "loss of ability to purchase and benefit from her good credit rating;" labor and expenses related to her attempts to correct her inaccurate credit reports; and "emotional distress" in violation of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681i(a)(1)(A). (*Id.* ¶¶ 115–17.)

In December 2024, Ms. Rivas requested another copy of her credit file from Experian. (*Id.* ¶ 118.) According to Ms. Rivas, this credit report contained "even more" inaccurate information. (*Id.* ¶¶ 121, 122–28.) Since the December 2024 credit file contained some of the same erroneous information, she argues that Experian either failed to send a dispute notice to

the list of account furnishers[3] or failed to delete the inaccurate information despite receipt of the corrected information from the furnishers.[4]  (*Id.* ¶¶ 129–30, 88.)  Ms. Rivas therefore alleges that Experian violated 15 U.S.C. § 1681i(a)(1)(A) by "fail[ing] to conduct a reasonable investigation" into the veracity of the disputed information, (*id.* ¶ 131), and violated § 1681e(b) by "failing to establish or to follow reasonable procedures to assure maximum possible accuracy" of Rivas's credit information, (*id.* ¶ 133).  Accordingly, she initiated this action on March 12, 2025, by filing in this Court a two-Count Complaint alleging FCRA violations against Original Defendants, including Experian.[5]  *See generally* (*id.*).

Experian filed its Answer (ECF No. 21) on April 30, 2025, denying the relevant allegations and preserving the right to assert an affirmative defense based upon the existence of a binding arbitration agreement between the parties.  (*Id.* at 62.)  On May 14, 2025, Experian filed its Motion to Compel Arbitration (ECF No. 28), arguing that Ms. Rivas signed an arbitration agreement when she enrolled in CreditWorks by completing the webform and clicking "Create Your Account."  (ECF No. 28-1 at 5.)  According to the Declaration of Dan Smith ("Mr. Smith"), the Director of Product Operations at CIC, Ms. Rivas enrolled in CreditWorks on March 28, 2024.  (ECF No. 28-2 at 2.)  Experian argues that, by enrolling, Ms. Rivas agreed to the "Terms of Use Agreement" located in the disclosure statement above the "Create Your Account" button.  (*Id.* at 2–3; ECF No. 28-1 at 6.)  The Terms of Use

---

[3] Under the Fair Credit Reporting Act ("FCRA"), consumer reporting agencies are required to provide notification of a consumer's dispute "to any person who provided any item of information in dispute" with "all relevant information regarding the dispute that the agency has received from the consumer[.]"  15 U.S.C. § 1681i(a)(2)(A).

[4] The FCRA also requires consumer reporting agencies, "after any reinvestigation," to "promptly delete" items of information "found to be inaccurate or incomplete or [that] cannot be verified."  15 U.S.C. § 1681i(a)(5)(A).

[5] As noted above, Ms. Rivas stipulated to dismissal with prejudice of all claims against Original Defendants Equifax and Trans Union, both of which have been terminated from this matter.  *See* (ECF Nos. 44, 46).

Agreement contains a heading—"Dispute Resolution by Binding Arbitration"—and a warning to the reader that this arbitration agreement "affects your rights." (ECF No. 28-2 at 14–15.)

In section (a), the Terms of Use Agreement states that "[CIC] and you agree to arbitrate all disputes and claims between us that arise out of or relate to this Agreement, which includes any Information you obtain through the Services or Websites[.]" (*Id.* at 15.) In section (c), it further provides that "[a]ll issues are for the arbitrator to decide," including arbitrability and the scope and enforceability of the arbitration agreement. (*Id.* at 16.) Experian contends that it can directly enforce arbitration as a party to the Terms of Use Agreement because it is an affiliate of CIC.[6] (ECF No. 28-1 at 5, 9–10.) Alternatively, Experian argues that it can enforce arbitration as a third-party beneficiary of the agreement. (*Id.* at 5, 10–14.)

Ms. Rivas filed a Response in Opposition (ECF No. 33), in which she argues that Experian has failed to carry its burden of proving the formation of a binding arbitration agreement because Mr. Smith's Declaration is inadmissible as evidence. (*Id.* at 7–16.) According to Ms. Rivas, Mr. Smith could not possess personal knowledge of the documents that she reviewed or the process that she used to register and request credit files. (*Id.* at 8–16.) Alternatively, she argues that Mr. Smith's Declaration cannot establish that she actually assented to the Agreement even if Experian could prove that she signed up with CIC. (*Id.* at 17–20.) She asks this Court to direct the parties to engage in further discovery over the formation of the arbitration agreement and to determine whether Experian possesses documentary evidence of her assent to arbitration. (*Id.* at 21.) Pursuant to Experian's Motion

---

[6] In the Terms of Use Agreement, CIC is referred to by the name under which it does business, Experian Consumer Service ("ECS"). (ECF No. 28-1 at 4; ECF No. 28-2 at 2 ¶ 1.)

to Stay Discovery (ECF No. 37) filed June 27, 2025, this Court stayed discovery pending resolution of Experian's Motion to Compel Arbitration. (ECF No. 41). This matter is now ripe for review.

## STANDARD OF REVIEW

As Judge Chuang of this Court has previously explained, "Judges in this District have recognized that 'motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment.'" *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) (quoting *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013)). The U.S. Court of Appeals for the Fourth Circuit has held that the movant's burden in a motion to compel arbitration is "akin to the burden on summary judgment." *Galloway v. Santander USA, Inc.*, 819 F.3d 79, 85 n.3 (4th Cir. 2016) (quoting *Chorley Enters. v. Dickey's Barbecue Rests.*, 807 F.3d 553, 564 (4th Cir. 2015)). Accordingly, a motion to compel arbitration must be granted where the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a court's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit

have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). This Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Judd*, 718 F.3d at 312. "The plaintiff is entitled to have the credibility of all his evidence presumed." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citing *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991)).

## ANALYSIS

The Federal Arbitration Act ("FAA") governs disputes over whether to compel arbitration. 9 U.S.C. §§ 1–16. Under the FAA:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

*Id.* § 2. The FAA reflects "both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (first quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); and then quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

As such, a federal court must compel arbitration and stay "any suit or proceeding" where: (1) a dispute exists between the parties; (2) there is a written agreement with an arbitration provision claimed to cover the dispute; (3) the transaction involves commerce; and

(4) one party is refusing or neglecting to arbitrate. *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *see also Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("[A] district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview."); 9 U.S.C. § 3 (obligating court to stay "any suit or proceeding" governed by arbitration "until such arbitration has been had in accordance with the terms of the agreement"); *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) (requiring stay where arbitration provision governs).  Even so, "courts will not blindly apply the presumption in favor of arbitrability[.]" *Peabody Holding Co., LLC v. United Mine Workers of Am.*, 665 F.3d 96, 104 (4th Cir. 2012).  Ultimately, "the party seeking to compel arbitration . . . 'bears the burden of establishing the existence of a binding contract to arbitrate.'"  *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 151 (4th Cir. 2025) (quoting *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 218 (4th Cir. 2024)).

**I.  A Valid Arbitration Agreement Exists Between Ms. Rivas and Experian**

To meet its burden and compel arbitration in this case, Experian must show "the existence of a binding contract to submit disputes to arbitration[,]" which, in turn, requires proof that Ms. Rivas "agreed to the terms of use, i.e., that [s]he enrolled in CreditWorks, and the content of those terms of use when [s]he did so." *Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194, 204 (4th Cir. 2025).  To support its assertion that registration for CreditWorks required Ms. Rivas to agree to the Terms of Use Agreement, Experian provides the Declaration of Mr. Dan Smith ("Mr. Smith"), CIC's Director of Product Operations. *See* (ECF No. 28-1 at 10; ECF No. 28-2).  In Opposition (ECF No. 33), Ms. Rivas raises two arguments. First, she contends that Experian has not met its evidentiary burden to prove the existence of

a binding arbitration agreement because Mr. Smith's Declaration is inadmissible and insufficient evidence of her assent. (*Id.* at 8–16.) Thus, she asserts that the parties require additional discovery regarding any agreement to arbitrate. (*Id.* at 21–23.) Second, and alternatively, she argues that even assuming such evidence is admissible, she did not assent to arbitration via any purported clickwrap agreement when she signed up for CreditWorks.[7] (*Id.* at 17–20.) The Court addresses the admissibility of Mr. Smith's Declaration before turning to the parties' agreement to arbitrate.

## A. Mr. Smith's Declaration is Admissible Evidence

As explained above, "[a] party's burden to show the existence of an agreement to arbitrate is 'akin to the burden on summary judgment'" and the party seeking to invoke arbitration bears the burden to establish the existence of a binding arbitration agreement. *Austin*, 148 F.4th at 202 (quoting *Chorley Enters.*, 807 F.3d at 564). The requirements for affidavits under Federal Rule of Civil Procedure 56, which governs summary judgment, thus apply to the movant's burden in a motion to compel arbitration. *Id.* Under Federal Rule of Civil Procedure 56(c), "[a] declaration 'used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the

---

[7] Ms. Rivas does not appear to dispute that Experian may enforce the arbitration agreement as a party to the Terms of Use Agreement. *See generally* (ECF No. 33). Regardless, the Terms of Use Agreement between Plaintiff and ECS (doing business as CIC) defines ECS to include its "affiliates, (including, but not limited to, Experian Information Solutions, Inc.) . . . ." (ECF No. 28-2 at 9; ECF No. 28-1 Ex. 2.) Accordingly, Experian may enforce the arbitration agreement as a party to the contract. *See, e.g., Meeks v. Experian Info. Sols., Inc.*, 2022 WL 17958634, at *2 (9th Cir. Dec. 27, 2022) (concluding Experian may enforce arbitration agreement with identical language as a party to the agreement despite not being a signatory to the agreement); *Levy v. Credit Plus, Inc.*, 2023 WL 2644352, at *6 (S.D.N.Y. Mar. 27, 2023) (concluding named defendant was party to arbitration agreement because agreement defined "ECS" to include its affiliates and defendant was one such affiliate); *Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 26–27 (E.D.N.Y. 2023) (deeming Experian party to arbitration agreement where agreement defined ECS to include affiliates, Experian was such an affiliate, and agreement mentioned Experian by name multiple times).

affiant or declarant is competent to testify on the matters stated.'" *Id.* at 202–203 (quoting FED. R. CIV. P. 56(c)(4)). In this case, Experian seeks to use Mr. Smith's Declaration describing the CreditWorks registration process to prove that Ms. Rivas must have assented to the Terms of Use Agreement, including its arbitration agreement, when she registered for CreditWorks.

Ms. Rivas argues, however, that Mr. Smith's Declaration is inadmissible because it is not based on personal knowledge. *See generally* (ECF No. 33 at 9–16). Specifically, she contends that Mr. Smith "cannot validate what appeared on [her] unknown electronic device on March, 28, 2024," nor does he "establish[] that he has ever viewed any consumer visiting the unknown website at any point[.]" (ECF No. 33 at 10, 11.) She further argues that, despite Mr. Smith's position as "Director of Product Operations for [CIC]," (ECF No. 28-2 at 2), he cannot claim personal knowledge based on "his review of . . . unknown and unnamed documents" because he has not adequately referenced or produced substantiating documents, (ECF No. 33 at 10). Thus, she contends that Mr. Smith's Declaration lacks tangible evidence such as internal records or an audit or activity log that would establish the IP address of the device that she allegedly used to sign up for CreditWorks on March 28, 2024.[8] (*Id.* at 10–11.)

Personal knowledge requires that the affiant make an affirmative showing of specific facts that are not based exclusively upon information and belief. *See Burwick v. Pilkerton*, 700 F. App'x 214, 216 (4th Cir. 2017) (quoting *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (collecting cases)). Federal courts presume that "ordinarily, officers would have

---

[8] Based on Experian's failure to produce such documents, Ms. Rivas suggests that they "do not exist." (ECF No. 33 at 14.)

personal knowledge of the acts of their corporations." *Austin*, 148 F.4th at 203 (quoting *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1342 (4th Cir. 1992) (en banc)). Moreover, an affiant's personal knowledge on behalf of his employer may be based on his review of business files and on his day-to-day work responsibilities. *See id.* at 204; *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 693 (E.D. Va. 2020); *see also Nader v. Blair*, 549 F.3d 953, 963 (4th Cir. 2008) (affidavit based on personal knowledge where, although affiant "did not personally take part in or witness the creation of the documents," she testified as a "custodian of the records" who was "familiar with [her employer's] record-keeping practices"). An opposing party may overcome the presumption of a corporate officer's personal knowledge where she presents facts that disprove such knowledge. *See Catawba Indian Tribe*, 978 F.2d at 1342 (assuming corporate affiants have personal knowledge where opposing party failed to present evidence that the affiants lacked personal knowledge); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 135 n.9 (4th Cir. 2002) (same); *In re Apex Express Corp.*, 190 F.3d 624, 635 (4th Cir. 1999) (same).

As a corporate declarant in this case, Mr. Smith is entitled to the "presumption" that he has "personal knowledge" of CIC's acts. *Austin*, 148 F.4th at 203 (quoting *Catawba Indian Tribe*, 978 F.2d at 1342). Despite this presumption, he must still allege facts that are based on his knowledge and experience, not merely "information and belief." *Pace*, 283 F.3d at 1278. The Fourth Circuit and district courts within this circuit have recognized that testimony based on "day-to-day work responsibilities" and "the review of pertinent documents maintained as business records" can constitute personal knowledge. *Austin*, 148 F.4th at 204 (internal quotation marks omitted); *see also Wells v. Trans Union, LLC*, 2025 WL 475846, at *3–4 (E.D.

Va. Feb. 12, 2025) (finding personal knowledge because affiant's description of the "institutional processes" for subscription are based on his professional experience and review of relevant documents, neither of which "rid him of personal knowledge of the documents' contents" or of "Plaintiff's particular engagement"); *Jenkins v. Experian Info. Sols., Inc.*, 2024 WL 4100258, at *2 (E.D. Va. Sep. 6, 2024) (finding personal knowledge because affiant's testimony was based on his experience and job responsibilities as "Director of Product Operations for [CIC]"). As explained below, Mr. Smith's declaration satisfies Experian's evidentiary burden in this case.

Mr. Smith frames his declaration around the "knowledge [he has] acquired in the course and scope of [his] job responsibilities" as the "Director of Product Operations," especially including his review of "internal records that store CreditWorks account information." (ECF No. 28-2 at 1–2.) He states that (1) Ms. Rivas "would not have been able to successfully enroll in CreditWorks unless she clicked [the 'Create Your Account'] button;" (2) by "click[ing] the 'Create Your Account' button, [she] accept[ed] and agree[d] to the Terms of Use Agreement," including its arbitration provision; and (3) she was preliminarily required to "enter[] her personal information" into the webform prior to her enrollment in CreditWorks. (ECF No. 28-2 at 3–4); *see also* (ECF No. 28-2 Ex. 1 (asking for the subscriber's name, current street address, and email address)). Moreover, Mr. Smith explains that, because he is the "Director of Product Operations for [CIC]," he possesses "familiarity with the CreditWorks enrollment process and [CIC]'s databases that store consumer account information" and has the ability to retrieve this information. (ECF No. 28-2 at 1.) By searching the database using Ms. Rivas's "personally identifiable information"—the information that Mr. Smith avers she submitted

when first enrolling in CreditWorks—he can retrieve her membership details, including "the date and time of enrollment, and the version of the Terms of Use [she] agreed to." (*Id.*) Based on his review of "CIC's membership enrollment data," Mr. Smith specifically avers that Ms. Rivas enrolled in CreditWorks on March 28, 2024, and cancelled her CreditWorks membership on April 10, 2024. (*Id.* at 2, 3 n.1.)

Mr. Smith's description of the CreditWorks enrollment process is rooted in his professional experience and entitled to a presumption of personal knowledge. *See George v. Experian Info. Sols.*, Civ. No. LKG-23-2303, 2024 U.S. Dist. LEXIS 105824, at *20–21 (D. Md. June 14, 2024) (presuming Mr. Smith to have personal knowledge of "[t]he process for creating a CreditWorks account" in identical circumstances because he is "personally familiar with the process for establishing a CreditWorks account *via* the CIC website"); *Bryant*, 288 F.3d at 135 n.9 (finding personal knowledge where affidavits contained sufficient information and "a description of the affiants' job titles and duties"). Although Mr. Smith testifies to the ordinary enrollment process encountered by all CreditWorks subscribers, his assertions about what "'would have appeared' on a user's screen" still satisfy the personal knowledge requirement. *Melo*, 439 F. Supp. 3d at 694; *see also George*, 2024 U.S. Dist. LEXIS 105824, at *22–24 (finding sufficient evidence based on testimony that the online form containing the arbitration agreement was the only way to enroll in credit reporting services); *Wells*, 2025 WL 475846, at *4–6 (finding sufficient evidence based on testimony that "*all* new CreditWorks members" used the same subscription process and that relied upon "external documents" of consumers' information (emphasis in original)); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988–89 (N.D. Cal. 2017) (finding personal knowledge where affiant testified that the plaintiff "would

have been presented" with a disclaimer about the Terms & Conditions and Privacy Policy because "no account could be created" unless the plaintiff completed the same procedures as all other users).

Finally, Mr. Smith's declaration also references sufficient facts that identify Ms. Rivas. All subscribers must complete the same procedure, and Mr. Smith states that Ms. Rivas "entered her personal information . . . [and] click[ed] the 'Create Your Account' button the webform," enrolling her in CreditWorks and creating an internal record with CIC corresponding with her identifiable information. (ECF No. 28-2 at 1–2.) Mr. Smith is not required to state more particular evidence about Ms. Rivas's enrollment process, nor is he required to personally supervise what appeared on her screen.  *See Melo*, 439 F. Supp. 3d at 694 (finding sufficient evidence based on testimony relying upon defendant's "internal records of all account information and creation," including browser and device type, and "screenshots depicting what Plaintiff would have seen"); *George*, 2024 U.S. Dist. LEXIS 105824, at *22–24; *Wells*, 2025 WL 475846, at *4–6; *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 70–72 (2d Cir. 2017) (finding sufficient evidence based on screenshots of the registration screen and testimony that defendant maintained consumer account records).

While Ms. Rivas suggests that Mr. Smith must include more specific evidence such as the IP address of the device used to enroll, such evidence is not required when defendants supply sufficient alternative evidence, including a summary of application information with an explanation of how that information was compiled.  *See Castillo v. Cava Mezze Grill, LLC*, 2018 U.S. Dist. LEXIS 222887, at *8–9 (C.D. Cal. Dec. 21, 2018) (evidence of plaintiff's IP address is unnecessary when defendant provides electronically signed employment forms that correlate

with asserted timestamps).  In circumstances nearly identical to this case, courts have rejected plaintiffs' assertions of a genuine factual dispute based on the assertion that a corporate declarant must validate what appeared on the plaintiff's specific electronic device during enrollment.  *See, e.g.*, *Wells*, 2025 WL 475846, at *4 (plaintiff fails to dispute "that he became a CreditWorks member" and "that he became a CreditWorks member *in the manner that Mr. Smith describes*" (emphasis added)); *Jenkins*, 2024 WL 4100258, at *3 (plaintiff's argument fails to "unequivocal[ly] den[y] . . . that the arbitration agreement exists"); *Williams v. Experian Info. Sols. Inc.*, 2024 U.S. Dist. LEXIS 148445, at *27–28 (D. Ariz. Aug. 20, 2024) (plaintiff's argument "imposes a far greater burden for personal knowledge than what is required"); *Buelna v. Experian Info. Sol., Inc.*, 2024 U.S. Dist. LEXIS 150934, at *7 (N.D. Ind. Aug. 20, 2024) (Mr. Smith does not have to be "in the room with [Plaintiff] when she enrolled" because his general "knowledge of the enrollment process" is sufficient).  In this case, therefore, Mr. Smith's personal knowledge of the required enrollment process for all users is sufficient, and he is not required to have personal knowledge of what appeared on Ms. Rivas's specific device during her enrollment.

Ms. Rivas also asserts that Experian must "provide the documents explicitly relied upon by [Mr.] Smith in obtaining his 'personal knowledge' of what allegedly occurred" during the enrollment process.  (ECF No. 33 at 13.)  To support this assertion, she cites a recently reversed decision from the Eastern District of Virginia that required a corporate declarant to specifically "identify the documents on which he based his asserted personal knowledge." *Austin v. Equifax Info. Servs., LLC*, 2023 U.S. Dist. LEXIS 223258, at *12 (E.D. Va. Dec. 13, 2023), *rev'd*, 148 F.4th 194 (4th Cir. 2025).  In reversing that decision for abuse of discretion,

however, the Fourth Circuit stated that the affiant possessed personal knowledge from his "day-to-day working responsibilities" and "review of pertinent documents" such that he was capable of "describ[ing] the appearance of the CreditWorks enrollment page, [and] what a user does on that page[.]" *Austin*, 148 F.4th at 204. The Fourth Circuit did not require additional technical documents to be submitted because the affidavit adequately demonstrated that "[Plaintiff] agreed to the terms of use . . . and [identified] the content of those terms of use when he did so."[9] *Id.*

As Director of Product Operations at CIC, Mr. Smith may have personal knowledge without producing the exact documents he reviewed or observing exactly "what appeared on [the plaintiff's] unknown electronic device." (ECF No. 33 at 10.) He is "presumed to have personal knowledge of matters related to the CIC website," *George*, 2024 U.S. Dist. LEXIS 105824, at *26, holds a professional title that requires his familiarity with the CreditWorks enrollment process, and alleges sufficient facts to identify Ms. Rivas and the only available enrollment process. *See Austin*, 148 F.4th at 204–205. Having determined that Mr. Smith's Declaration constitutes admissible evidence, the Court turns to whether Experian has met its burden to show the existence of a valid arbitration agreement.

---

[9] Ms. Rivas also references decisions from the Southern District of Georgia and from the Middle District of Florida, which the U.S. Court of Appeals for the Eleventh Circuit reversed. The Eleventh Circuit concluded that, where the plaintiff did "not deny enrolling, . . . [or] dispute the interface's description, . . . [or] claim that the terms were concealed or misleading," an unrebutted declaration based on "internal business records," a description of the enrollment process, and screenshots of enrollment pages was sufficient to establish an agreement to arbitrate. *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1348 (11th Cir. 2025); *see Lamonaco v. Experian Info. Sols., Inc.*, 2024 U.S. Dist. LEXIS 71551, at *11 (M.D. Fla. Apr. 19, 2024), *rev'd*, 141 F.4th 1343 (11th Cir. 2025); *see also Newton v. Experian Info. Sols., Inc.*, 2024 WL 3451895 (S.D. Ga. July 18, 2024), *rev'd* 2025 WL 2102084 (11th Cir. July 28, 2025).

**B.  There exists a valid agreement to arbitrate.**

Experian has sufficiently established the existence of a valid arbitration agreement with Ms. Rivas.  "The presumption favoring arbitration does not apply to th[e] preliminary question of [an] Arbitration Agreement's validity."  *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 291 (4th Cir. 2022).  Instead, state contract law governs the formation of arbitration agreements.  *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005); *see also Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 178 (4th Cir. 2025) ("Whether an arbitration agreement was properly formed is 'a question of ordinary state contract law principles.'" (quoting *Rowland v. Sandy Morris Fin'l & Est. Planning Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021))).  An agreement to arbitrate disputes is enforceable under Maryland law if it is a valid contract.  *Hill*, 412 F.3d at 543; *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656, 660–62 (Md. 2003).  "Under Maryland law, the formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration."  *Ford v. Genesis Fin. Sols., Inc.*, 726 F. Supp. 3d 441, 450 (D. Md. 2024) *aff'd* 2025 WL 1540933 (4th Cir. May 30, 2025) (internal quotation marks omitted) (quoting *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013)).

In this case, Ms. Rivas argues that, even if this Court accepts Mr. Smith's Declaration, Experian still fails to establish mutual assent to the contract.  (ECF No. 33 at 17.)  According to Ms. Rivas, the CreditWorks web portal was "deliberately misleading" because it did not require the consumer to view the agreement or check an "I agree" box even though the Terms of Use Agreement was hyperlinked.  (*Id.* at 18–19.)  Moreover, she argues that the agreement was confusing because, below the Terms of Use Agreement, it contained fine print that a

consumer would reasonably conclude is a summary of terms. (*Id.* at 19–20.) She asserts that Experian failed to provide adequate notice of contractual terms and cannot demonstrate mutual assent because the fine print summary omitted mention of an arbitration agreement. (*Id.* at 20.)

The "fundamental principles of contract law" still apply to online contracts even though "the digital age has changed the nature of contract formation." *Dhruva*, 131 F.4th at 151 (quoting *Marshall*, *v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 218 (4th Cir. 2024)). As such, the party asserting the existence of a contract must demonstrate that the other party "(1) had 'reasonable notice of an offer' to enter into the contract[;] and (2) 'manifested' assent to it." *Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 389 (4th Cir. 2024) (quoting *Marshall*, 112 F.4th at 218). Nevertheless, courts traditionally evaluate online contracts by sorting them into categories depending on whether they are browsewrap agreements or clickwrap agreements. "A clickwrap agreement is a dialogue box that appears on a webpage and requires that a user agree to certain terms before allowing the user to continue to use the website." *Hosseini v. Upstart Network, Inc.*, 2020 WL 573126, at *4 (E.D. Va. Feb. 5, 2020). Clickwrap agreements require a customer to affirmatively click a box on the website acknowledging receipt of and assent to the contract terms before he or she is allowed to proceed using the website. *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 669 (D. Md. 2009)). This Court has upheld a clickwrap agreement so long as it reasonably communicates the existence of the contract terms. *Lyles v. Chegg, Inc.*, Civ. No. RDB-19-3235, 2020 WL 1985043, at *3 (D. Md. Apr. 27, 2020) (citing *Meyer*, 868 F.3d at 76 (collecting cases)). A "[m]odified or hybrid clickwrap

agreement[]" exists "where the user must affirmatively manifest assent to agreements that are provided via hyperlink . . . ." *Hosseini*, 2020 WL 573126, at *4.

"A clickwrap agreement differs from a 'browsewrap agreement,' which does not require a user to click a box or button indicating that he or she agrees to certain terms to use the website, but instead attempts to bind the user to hyperlinked terms simply through using the website." *Gordon v. Zeroed-In Tech., LLC*, Civ. No. BAH-23-3284, 2025 WL 941365, at *9 (quoting *Am. Eagle Motors, LLC v. Copart of Conn., Inc.*, 2023 WL 123503, at *3 (E.D. Va. Jan. 5, 2023) (citation omitted)). In this case, the CreditWorks enrollment process constitutes a modified or hybrid clickwrap agreement that requires the subscriber to indicate assent to the linked Terms of Use by clicking the "Create Your Account" button. *See* (ECF No. 28-2 at 1– 4, Ex. 1). Accordingly, the parties in this case formed an agreement to arbitrate if the Terms of Use clickwrap agreement reasonably communicated the existence of the contract's terms. *See, e.g.*, *Lyles*, 2020 WL 1985043, at *3.

Mr. Smith's Declaration and the CreditWorks enrollment page provided by Experian establish that Ms. Rivas had reasonable notice of the Terms of Use Agreement containing the arbitration agreement. *See generally* (ECF No. 28-2). As explained above, CIC's web portal provided a warning to users in bold text that "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of you Privacy Policy." (*Id.* Ex. 2.) The language, "Terms of Use Agreement," is set off from the rest of the text in a blue hyperlink that opens the full agreement if clicked. (*Id.*) Below this warning, the web portal provides in bold text additional information that is significant for the subscriber to know when using CIC's services. (*Id.*) The web portal specifically informs the subscriber that,

by creating an account, the subscriber authorizes CIC to provide a credit report, notify the subscriber of related products and services, and alert the subscriber about "credit opportunities and advertised credit offers." (*Id.*) The Fourth Circuit, in reviewing the CreditWorks web portal, determined that such bold text, blue hyperlink, and uncluttered background would all place a reasonably prudent user on notice of CreditWorks's contractual offer. *Austin*, 148 F.4th at 206–207.[10]

Mr. Smith's Declaration also establishes mutual assent between the parties to the arbitration agreement. Although CIC's web portal presented a "hybrid clickwrap," a "clickwrap" agreement may be enforceable even where it does not demand a user's up-front assent to terms of use that appear automatically without a hyperlink. *See id.* at 208. Rather, a modified or hybrid clickwrap agreement may be enforceable where it sufficiently communicates that "completing the subscription process . . . constitute[s] assent to the proposed contract." *Dhruva*, 131 F.4th at 153. In this case, CIC's website "provides clear and reasonably conspicuous notice" of contract terms that were accessible to the user by scrolling down or clicking a hyperlink, and the user accepts those terms by completing enrollment and pressing "Create Your Account." *Id.* Experian is not required to provide an explicit "I accept" or "I agree" button. *See id.* at 155 (quoting *Marshall*, 112 F.4th at 222). It is only required to place the user on notice that "the act of clicking will constitute assent to the terms and

---

[10] Although the Fourth Circuit in *Austin* evaluated mutual assent under North Carolina law, it analyzed notice under a clickwrap agreement by citing caselaw reviewing decisions discussing Maryland law. *See, e.g.*, *Austin*, 148 F.4th at 206 (citing *Dhruva*, 131 F.4th at 152). Moreover, this Court has recognized some similarities between North Carolina's law of mutual assent and Maryland's law of mutual assent. *See, e.g.*, *MJ Enter. Holdings, Inc. v. Spiffy Franchising, LLC*, Civ. No. RDB-24-3194, 2025 WL 2163052, at *8 (D. Md. July 30, 2025) ("Under Maryland law, mutual assent requires '(1) intent to be bound, and (2) definiteness of terms.' Quite similarly, North Carolina provides that mutual assent exists where the parties 'manifest intent to be bound' such that 'there has been a meeting of the minds as to all essential terms of the agreement.'" (internal citations omitted)).

conditions of an agreement" that the user possesses knowledge of and is able to access. *Id.* (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022)). Thus, Ms. Rivas manifested assent to the arbitration agreement with Experian.

Finally, Ms. Rivas does not dispute that she made an account with CIC to request a credit report through Experian's service. As Judge Griggsby on this Court has previously explained, "Plaintiff's lack of recollection" about the CreditWorks Terms of Use Agreement, "without more, is not sufficient to rebut the evidence" demonstrating Plaintiff's assent to the arbitration agreement through the enrollment process. *George*, 2024 U.S. Dist. LEXIS 105824, at *3; *see also Jenkins*, 2024 WL 4100258, at *3 (finding valid arbitration agreement because plaintiff failed to "'unequivocally' den[y] that the arbitration agreement exists," thereby failing to establish a genuine dispute of material fact); *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 348 (D. Md. 2015) (on summary judgment standard, parties cannot rely on "mere allegations or denials" but must "set out specific facts showing a genuine dispute for trial" (citing FED. R. CIV. P. 56(c)(1))). In this case, Ms. Rivas asserts in her declaration that, if she saw "any . . . indication" "that [she] agreed to waive [her] right to a jury trial with Experian," she "would not have signed up for an online Experian account." (ECF No. 33-2 at 1.) Ms. Rivas claims that she was "unaware" that, "by signing up for such an account," she "agreed to arbitrate any claims against Experian." (*Id.*) These statements implicitly acknowledge that Ms. Rivas made an Experian account.

Nor does she dispute that the CreditWorks enrollment process detailed by Mr. Smith is, in fact, the process that she used to make her account. *See* (ECF No. 33 at 10 (Mr. Smith "does not and cannot validate what appeared on Plaintiff's unknown electronic device on

March 28, 2024, when Plaintiff allegedly signed up for a CreditWorks account."); *id.* at 11–12 ("[A]ll of Smith's statements . . . boil down to [his] speculations about what Plaintiff must have done."))."  While Ms. Rivas asserts that she has "never heard of CreditWorks" and never assented to an arbitration agreement "[t]o the best of [her] knowledge," her statements do not provide facts that rebut Mr. Smith's description of the CreditWorks enrollment process.  (ECF No. 33-2 at 1); *see George*, 2024 U.S. Dist. LEXIS 105824, at *3; *Jenkins*, 2024 WL 4100258, at *3.

By setting forth sufficient facts to demonstrate that Ms. Rivas created an account with CIC, enrolled in CreditWorks, and agreed to a Terms of Use Agreement containing an arbitration provision, Experian has met its burden to demonstrate the existence of a valid arbitration agreement between the parties.  In Opposition, Ms. Rivas presents only a general argument that she did not mutually assent to the Terms of Use Agreement during Experian's enrollment process.  *See* (ECF No. 33 at 17–21).  She provides no evidence denying the existence of an arbitration agreement or detailing an alternative enrollment process different from that described by Mr. Smith.  Accordingly, she has not established a genuine dispute of material fact, and this Court must grant Experian's Motion to Compel Arbitration.  *See Galloway v. Santander USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration (ECF No. 28) is GRANTED.

A separate Order follows.

Date: January 15, 2026

/s/
Richard D. Bennett
United States Senior District Judge